UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOHANNA MARIE CHRISTENSEN,           )        No. EDCV 09-1257-RC
                                     )
                 Petitioner,         )
                                     )
vs.                                  )        OPINION AND ORDER
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
                                     )
                                     )
                 Respondent.         )
_____)

   Plaintiff Johanna Marie Christensen filed a complaint on July 10,
2009, seeking review of the Commissioner's decision denying her
application for disability benefits.  On December 2, 2009, the
Commissioner answered the complaint, and the parties filed a joint
stipulation on February 10, 2010.

**BACKGROUND**

   On March 7, 2007, plaintiff, who was born on September 28, 1963,
applied for disability benefits under the Supplemental Security Income

program of Title XVI of the Act, claiming an inability to work since

March 7, 2007, due to degenerative disc disease and a herniated disc.

A.R. 8, 24, 116.  The plaintiff's application was initially denied on

July 5, 2007, and was again denied on October 19, 2007, following

reconsideration.  A.R. 52-62.  The plaintiff then requested an

administrative hearing, which was held before Administrative Law Judge

Lowell Fortune ("the ALJ") on December 2, 2008.  A.R. 17-49, 64.  On

March 6, 2009, the ALJ issued a decision finding plaintiff is not

disabled.  A.R. 5-16.  The plaintiff appealed this decision to the

Appeals Council, which denied review on May 14, 2009.  A.R. 1-4, 107.


**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

review the Commissioner's decision denying plaintiff disability

benefits to determine whether his findings are supported by

substantial evidence and he used the proper legal standards in

reaching his decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir.

2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).  The

claimant is "disabled" for the purpose of receiving benefits under the

Act if she is unable to engage in any substantial gainful activity due

to an impairment which has lasted, or is expected to last, for a

continuous period of at least twelve months.  42 U.S.C. §

1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

burden of establishing a prima facie case of disability."  Roberts v.

Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

(1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

//

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. § 416.920(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 416.920(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since March 7, 2007, her application date.  (Step One).  The ALJ then found plaintiff has the severe impairment of "low back pain with lumbar degenerative disc disease" (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a listed impairment.  (Step Three).  The ALJ next determined plaintiff is unable to perform her past relevant work.  (Step Four).  Finally, the ALJ found plaintiff can perform a significant number of jobs in the

national economy; therefore, she is not disabled.   (Step Five).

## II

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations.   Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift).").   Here, the ALJ found plaintiff has the following RFC:

> [Plaintiff] is able to lift and/or carry twenty pounds
> occasionally and ten pounds frequently, stand and/or walk
> for two hours in an eight-hour day, and sit for six hours in
> an eight-hour day.   She can climb stairs but never climb
> ladders.   She can occasionally bend and stoop but never
> balance.   She should not work around dangerous machinery or
> unprotected heights.

A.R. 13.   However, plaintiff contends the ALJ's decision is not supported by substantial evidence because he failed to properly consider the opinions of her treating orthopedist, Rajiv Puri, M.D., and her physical therapy records, and the ALJ erroneously determined she was not a credible witness.

### A.   Treating Physician's Opinion:

Dr. Puri initially examined plaintiff on November 6, 2006, and diagnosed her as having multilevel degenerative disc disease at L3-S1

4

with radicular pain to her legs.  A.R. 217.  Dr. Puri found plaintiff
had tenderness over her lumbar spine, limited flexion, and difficulty
extending her spine from a flexed position, although extension was
relatively pain free.  Id.  Dr. Puri also noted that, in a sitting
position, plaintiff had a mildly positive root tension sign in the
left leg; but neural examination of the left leg was otherwise
unremarkable, and plaintiff had normal reflexes, sensation and motor
power.  Id.  Lumbar spine x-rays revealed some narrowing of the disc
spaces at L4-L5 and L5-S1, but no obvious instability.  A.R. 218.  Dr.
Puri also stated that a lumbar spine MRI revealed the presence of
degenerative disc disease at L3-L4, L4-L5, and L5-S1, and a bulging
disc at L5-S1 causing some foraminal stenosis on the left side and, to
some extent, on the right side.  A.R. 217.  On December 28, 2006,
plaintiff had a discogram, which revealed severe concordant pain at
L3-L4, L4-L5, and L5-S1; however, it was also noted that plaintiff had
a low pain tolerance.  A.R. 219.

     Dr. Puri reexamined plaintiff on February 7, 2007, and noted her
symptoms had "somewhat settled, though she still has back pain and
left leg pain, which gets worse from time to time"; and Dr. Puri
advised plaintiff to take her usual pain medications and to avoid any
kind of work that would strain her back.  A.R. 216.  Dr. Puri next
examined plaintiff on May 21, 2007, and noted she had no leg pain or
numbness; and Dr. Puri recommended plaintiff have home physical
therapy.  A.R. 215.  On September 17, 2007, Dr. Puri opined
plaintiff's low back pain and left leg pain were stable, plaintiff had
difficulty getting up from a sitting position because her back gets
stuck, and at times plaintiff's left leg gives out, and she has a

tendency to drag her left leg; and Dr. Puri again advised plaintiff to perform home physical therapy.  A.R. 214.  On December 17, 2007, Dr. Puri opined plaintiff's lower back pain was worse, with pain radiating down both legs, and she was a surgical candidate.  A.R. 243.

On January 16, 2008, Dr. Puri diagnosed plaintiff as having degenerative disc disease at L4-L5 and L5-S1, and he opined plaintiff was a candidate for posterior spinal decompression and fusion of L4-L5 and L5-S1.  A.R. 244.  Dr. Puri's diagnosis and opinion were based on the following:

> On examination, [plaintiff] is very tender over the lower lumbar area of L4-5 and L5-S1.  She has marked limitation of motion with range of motion being only 15 degrees and if she goes beyond then she gets stuck and has difficulty in straightening up.  She also has limited extension and lateral flexion.  In a sitting position, she did have a positive root tension sign in both lower extremities, left more than right.  She also has hypoactive reflexes in the lower extremities.  MRI of the lumbar spine revealed significant degeneration of the discs at L4-5 and L5-S1.

Id.  Lumbar spine x-rays revealed some disc space narrowing at L4-L5 and L5-S1.  A.R. 245.  On April 3, 2008, Dr. Puri operated on plaintiff, performing a spinal decompression and fusion at L4-L5 and L5-S1.  A.R. 246-48.  The plaintiff did well postoperatively, but still had occasional radicular pain and numbness in the left leg and some problem with her left knee giving way.  A.R. 250-53, 255.

Between June 3 and August 19, 2008, plaintiff had postoperative physical therapy. A.R. 237-41. Lumbar spine x-rays taken on June 18, 2008, "revealed excellent fixation with fusion in progress[,]" and lumbar spine x-rays taken on October 6, 2008, showed stable fixation with fusion in progress. A.R. 254, 256.

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."[1] Spraque v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick, 157 F.3d at 725; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

---

[1] On the other hand, a physical therapist is not an acceptable medical source, 20 C.F.R. § 416.913(a), and the ALJ is permitted to accord the therapist's opinion "less weight" than the opinions of an acceptable medical source. Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir.), cert. denied, 519 U.S. 881 (1996). Nevertheless, the ALJ should treat such evidence, at a minimum, as lay testimony, 20 C.F.R. § 416.913(d)(1); Bilby v. Schweiker, 762 F.2d 716, 719 n.3 (9th Cir. 1985) (per curiam), and the ALJ cannot discount such testimony without giving "reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

1      In assessing a claimant's application for disability benefits,

2   the ALJ need not set forth verbatim every statement a physician makes;

3   rather, the ALJ need only discuss evidence that is significant and

4   probative of a claimant's disability claim.  <u>Howard v. Barnhart</u>, 341

5   F.3d 1006, 1012 (9th Cir. 2003); <u>Best v. Astrue</u>, 580 F. Supp. 2d 975,

6   981 (C.D. Cal. 2008).  Here, the ALJ discussed in detail Dr. Puri's

7   treatment of plaintiff, A.R. 11, including plaintiff's participation

8   in postoperative physical therapy, noted there were no medical source

9   statements from a treating physician imposing functional limitations,

10  and adopted as plaintiff's RFC assessment the opinions of medical

11  expert Samuel Landau, M.D.,[2] who reviewed the medical evidence.  A.R.

12  10, 14, 19-23.  Neither Dr. Puri nor any other physician offered an

13  opinion contrary to the ALJ's RFC assessment, which is also consistent

14  with the opinions of examining physician Jeff Altman, M.D.,[3] A.R. 202-

15  05, and nonexamining physicians J. Hartman, M.D., and Keith J. Wahl,

16  //

17

18      [2]   The administrative hearing transcript erroneously

19  identifies the medical expert as "Sam Ruletta [phonetic]" instead
    of Dr. Sam Landau.  <u>See</u> A.R. 10, 14, 19, 102.

20

21      [3]   Dr. Altman examined plaintiff on June 9, 2007, before her
    surgery, and opined that plaintiff had the following RFC:

22

23          Pushing, pulling, lifting, and carrying will be 50
            pounds occasionally and 25 pounds frequently.  Walking

24          and standing would be done for six hours in an eight-
            hour workday.  Sitting would be done for six hours in

25          an eight-hour workday.  Postural activities would be
            done on a frequent basis.  Agility activities would be

26          on a frequent basis.  Assistive device is not medically
            necessary.  Gross and fine manipulative [actions] can

27          be done without restrictions.

28  A.R. 205.

M.D.[4]  A.R. 206-10.  Accordingly, there is no merit to plaintiff's claim that the ALJ's decision is not supported by substantial evidence because he failed to properly consider the opinions of her treating orthopedist, Rajiv Puri, M.D., and her physical therapy records.  To the contrary, the ALJ's RFC assessment is supported by substantial evidence in the record.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

### B.   Credibility:

Once a claimant has presented objective evidence that she suffers from an impairment that could cause pain or other nonexertional limitations, the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence."  Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).  If the ALJ finds the claimant's subjective complaints are not credible, he "'must provide specific, cogent reasons for the disbelief.'"  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); Orn, 495 F.3d at 635.  Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595,

---

[4]  Dr. Hartman reviewed plaintiff's medical record on June 26, 2007, and essentially adopted the limitations Dr. Altman found.  A.R. 206-10.  Dr. Wahl reaffirmed Dr. Hartman's opinion on October 18, 2007.  A.R. 221.

599 (9th Cir. 1999); Vasquez, 572 F.3d at 591.

The plaintiff testified at the administrative hearing that she cannot work due to back pain radiating down her legs, which requires her to lie down after about an hour and a half. A.R. 26-27, 31-34. She also stated her legs give out on her and she has almost fallen quite a few times. A.R. 27, 38. In addition to her testimony, plaintiff also reported she cannot sit or stand for long, she cannot lift things, and she cannot drive or walk long distances. A.R. 116.

The ALJ found plaintiff's testimony was not entirely credible and rejected her testimony to the extent it was inconsistent with the RFC assessment because it did not comport with the medical record and other statements by plaintiff. A.R. 13-14. First, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony[,]" Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008), and that factor is certainly satisfied here. For instance, although plaintiff stated she is unable to work because of her condition, no physician has agreed with plaintiff or found her to be disabled. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1995); see also Harper v. Sullivan, 887 F.2d 92, 96-97 (5th Cir. 1989) (substantial evidence supported ALJ's conclusion claimant's complaints were not credible when "[n]o physician stated that [claimant] was physically disabled"). Moreover, Dr. Altman specifically opined that plaintiff was able to walk normally and an assistive device was not medically necessary, and, as the ALJ noted, despite plaintiff's complaints of disabling pain, leg numbness and her leg giving way, no physician has prescribed an

1  assistive device to plaintiff.  A.R. 14, 203, 205; Verduzco v. Apfel,
2  188 F.3d 1087, 1090 (9th Cir. 1999).  Additionally, the ALJ found that
3  "even though the claimant alleges disabling pain, she does not exhibit
4  any atrophy[,]" which is also a proper factor for rejecting a
5  claimant's excess pain testimony.    Osenbrock v. Apfel, 240 F.3d
6  1157, 1166 (9th Cir. 2001); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th
7  Cir. 1999).  Finally, the ALJ found that "the medical records do not
8  indicate the claimant suffers from debilitating side effects from her
9  medications."  A.R. 14; see Osenbrock, 240 F.3d at 1166.  This, too,
10 is a factor the ALJ may properly consider in rejecting plaintiff's
11 excess pain testimony.

12

13      Similarly, the ALJ may also properly rely on inconsistencies in a
14 claimant's statements to determine she is not a credible witness.
15 Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th
16 Cir. 2004); Connett v. Barnhart, 340 F.3d 871, 873-74 (9th Cir. 2003).
17 Here, the ALJ found plaintiff's testimony that she is unable to work
18 because of her pain was contradicted by statements she made to Dr.
19 Puri following her back surgery, when she told Dr. Puri she was doing
20 well postoperatively and had no back or leg pain and only occasional
21 numbness.  A.R. 253, 255.  This, too, is a proper basis for the ALJ's
22 adverse credibility determination.  Bray v. Astrue, 554 F.3d 1219,
23 1227 (9th Cir. 2009).  For all these reasons, "the ALJ provided 'clear
24 and convincing' reasons for rejecting [plaintiff's] testimony as not
25 credible."  Tommasetti, 533 F.3d at 1037; Greger, 464 F.3d at 972.

26

27                                    **III**
28      At Step Five, the burden shifts to the Commissioner to show the

claimant can perform other jobs that exist in the national economy. <u>Bray</u>, 554 F.3d at 1222; <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1074-75 (9th Cir. 2007).   To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations.'" <u>Meanel</u>, 172 F.3d at 1114 (quoting <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995)).   There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[5]   <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1099 (9th Cir. 1999); <u>Bray</u>, 554 F.3d at 1223 n.4.   However, "[w]hen [the Grids] do not adequately take into account [a] claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted."   <u>Thomas</u>, 278 F.3d at 960; <u>Bray</u>, 554 F.3d at 1223 n.4.

    Here, vocational expert Alan E. Cummings testified at the administrative hearing.   <u>See</u> A.R. 45-49.   Hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, <u>Valentine</u>, 574 F.3d at 690; <u>Thomas</u>, 278 F.3d at 956, and

---

        [5]   The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants.   Each rule defines a vocational profile and determines whether sufficient work exists in the national economy.   These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity."   <u>Chavez v. Dep't of Health & Human Servs.</u>, 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

12

"[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." <u>Tackett</u>, 180 F.3d at 1101.  However, "[i]f a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'"  <u>Matthews</u>, 10 F.3d at 681 (citation omitted); <u>Lewis</u>, 236 F.3d at 517.

The ALJ asked vocational expert Cummings the following hypothetical question:

> [P]lease assume an individual of the same age, education and
> the work experience of [plaintiff's prior] jobs. . . .
> [A]ssume the [RFC] as stated by the medical expert. . . .
> Based on these circumstances, could this hypothetical person
> . . . perform any other work in the regional or national
> economy?

A.R. 46.  In response, the vocational expert opined that the individual could perform sedentary work[6] as:  an assembler, Dictionary

//

//

---

[6]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

of Occupational Titles ("DOT")[7] no. 739.687-066; an inspector, DOT no.
669.687-014; and a sorter, DOT no. 521.687-086.  A.R. 46-47.


     The plaintiff contends, however, that the hypothetical question
to the vocational expert was incomplete because it did not include
those limitations about which she testified.  The Court disagrees.
Since the ALJ found plaintiff's testimony was not credible to the
extent it conflicted with the RFC assessment, and that finding is
supported by substantial evidence, the hypothetical question to the
vocational expert did **not** have to include plaintiff's subjective
limitations.  See Greger, 464 F.3d at 973 ("The ALJ . . . 'is free to
accept or reject restrictions in a hypothetical question that are not
supported by substantial evidence.'" (quoting Osenbrock, 240 F.3d at
1164-65); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988)
("[E]xclusion of some of a claimant's subjective complaints in
questions to a vocational expert is not improper if the [Commissioner]
makes specific findings justifying his decision not to believe the
claimant's testimony about claimed impairments such as pain.").
Therefore, the vocational expert's testimony provides substantial
evidence to support the ALJ's Step Five determination that the
plaintiff can perform a significant number of jobs in the national
economy.  Valentine, 574 F.3d at 694; Osenbrock, 240 F.3d at 1163.


**ORDER**

     IT IS ORDERED that: (1) plaintiff's request for relief is denied;

---

     [7]  The DOT is the Commissioner's primary source of reliable
vocational information.  Johnson, 60 F.3d at 1434 n.6; Terry v.
Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).

1 | and (2) the Commissioner's decision is affirmed, and Judgment shall be

2 | entered in favor of defendant.

3

4 | DATE:  October 29, 2010            /S/ ROSALYN M. CHAPMAN
                                      ROSALYN M. CHAPMAN
5                                    UNITED STATES MAGISTRATE JUDGE

6 | R&R-MDO\09-1257.mdo
    10/29/10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28